Next we have 17-1190 United States v. Jimenez. Mr. Pincus. May it please the court. My name is Howard Pincus from the Federal Public Defender and I represent Rudolf Jimenez. The Colorado attempt statute is broader on its face than generic attempt. The district court therefore erred in treating Mr. Jimenez's conviction for attempted sexual assault as a crime of violence under the guidelines and for using an enhanced offense level and guideline range to sentence him. The Colorado statute says that a substantial step is conduct that is strongly corroborative of a defendant's purpose to commit the crime. It makes that a sufficient condition in all cases for attempt liability. If it's strongly corroborative, it is a substantial step. The model penal code, which is from which the substantial step. Let me ask you, Mr. Pincus, does any of this matter in light of Martinez? Well, yes, I think it does. Martinez was a residual clause case about the ACCA. In dealing with the guidelines issue and the crime of violence, the issue we're arguing that attempt under the guidelines is broader than generic attempt. And that's our argument here. It just was not addressed in Martinez. So are you saying that the argument that Martinez applies under the guideline commentary has been waived? No, we're not saying that we're not denying that an attempt under the guidelines, an attempted crime, can be a crime of violence. What we're saying is that attempt still has to meet the generic definition of attempt. It can't just be titled attempt. It has to match up with how the attempt is generically understood. And Martinez just did not address that issue. The impact I see. In Martinez, when they did the ACCA challenge, very clearly applied, looked at the generic versus the state, the Arizona, I think it was. But when they turned to the question of attempt, they just looked to the guidelines and said attempt is just a modifier. Right? Well, under the residual clause analysis in Martinez, the question was how great of a risk, a potential risk, was the Arizona attempt? Nobody was talking anywhere about what generic attempt was. The only relevance I see of Martinez actually is in our favor, which is that Martinez says if there's no narrowing of the statute by decisional law, by the state Supreme Court actually, we're going to take it at its face. We're going to take any step to mean any step. Here, we have not only no narrowing by the Colorado Supreme Court, we have the Colorado Supreme Court in Lenhart affirmatively saying that the statute means what it says. That unlike the model penal code, it actually equates a strongly corroborative of the firmness of criminal purpose. So what's only a the model penal code, remember, says a conduct shall not be a substantial step unless it's strongly corroborative. It doesn't say that if it's strongly corroborative, then that's a substantial step. Let me ask you this. Under the model penal code or the generic, only the have to be substantially similar. They don't have to be exact. Can you think of any examples of when something would be a substantial step and therefore an attempt in Colorado but not under the penal code? Well, yes. But first I'd like to say that I'm not sure that there is the rough correspondence language, substantially similar language in older Supreme Court cases. But in cases like Mathis and DeKalb, the Supreme Court is very clear that if a state statute is broader than the generic, that's enough. It doesn't matter how much broader. So I'm not sure that that really is true. I think what the court has been saying is minor distinctions, minor differences in terminology don't matter where it's the same basic elements. And that's not what the case is here. An example might be Lenhardt itself, which was an attempt to kill a corrections officer and a police officer. If in Lenhardt she had gone to a gun store and had tried to purchase a gun and had been adamant about it and was denied, that might be strongly corroborative of her intent, which she had expressed, to kill the officer. And that might be a substantial step under Colorado and not under the model penal code. The very fact that one is necessary, that in Colorado all you need is something strongly corroborative, shows that there is, in fact, a difference. If the model penal code had wanted to say any conduct strongly corroborative, it could have. It didn't. Colorado then changed what that law was when they amended its criminal code and said strongly corroborative is enough. So there is a gap between those two. As this court has recognized, attempt cases are, it's difficult to draw much from various attempt cases because they're so fact specific. But here in Colorado, a jury would be instructed that a substantial step is any conduct strongly corroborative. It wouldn't have to deal with the furthering of the first. Why don't you think those are really synonymous? Colorado would not criminalize mere preparation. It would not criminalize bad intent. It requires something else. And really, why aren't we just really talking about substantial steps, strongly corroborative, or really the same thing, and that leads us really back to the model penal code? Well, I'm not sure that you can take that actually from Lenhardt. I mean, Lenhardt does talk about the mere preparation case as still being, having some value. But then it turns back to what the statute says and says, in any event, what we need here, all that we need in Colorado is that it be strongly corroborative. It's more direct in that way than the model penal code. The model penal code talks about conduct that is in furtherance of the, that is a substantial step towards the completion of the crime. Colorado says that strongly corroborative is itself enough. If the model penal code had wanted those two to be different, it didn't. Colorado did. So there is a gap between the two. And that shows that Colorado attempt is, in fact, broader than the modern generic definition. And because it's broader, the district court erred in treating Mr. Jimenez's attempt conviction under the guidelines as a crime of violence and increasing his base offense level from 14 to 20 and his guideline range from 15 to 21 to 30 to 37 months. Let me ask you this. Even if we agreed with you on the crime of violence issue, wouldn't it be easy to find from this record that it's harmless error because the district court pretty clearly indicated that the sentence would be the same even if it were not a crime of violence? The district court's reasoning should give this court reason to doubt that it, in fact, would have done what it said when it wasn't faced, actually, with a 15 to 21-month guideline range. Everything that the district court said in imposing a sentence suggested higher than bottom of the guideline range, bottom of the guideline sentence. It talked about Mr. Jimenez's extensive criminal history. It talked about his repeated bad judgment, an accelerating pattern, violence in his record, all kinds of things. And the court actually said this is what the government was arguing, which were these same factors, shows that this is worse than in some circumstances. That would suggest not a bottom of the guideline range. Instead, the district court followed the government's recommendation to go to the bottom of the guideline range and impose a sentence of only 30 months. But the district court rejected the 11C plea because it thought 24 months wasn't enough under the factors, right? Well, what it said was, it never really, I don't think it expressly said that. What it said is you guys are trying to split the baby. You're trying to go between 15 to 21 and 30 to 37 and you came up with 24. This is not a civil proceeding. It's not how we do things here. It did talk about sufficient. It said under the factors, 24 months isn't enough. I mean, that's my recollection of the record. And it mentioned several, not just once, but the court mentioned at least twice with some detail that even if this were not a crime of violence, my sentence would be 30 months. It did say it twice. But the reasoning is inconsistent with the guidelines not having an effect. And as for what the district court said in rejecting the plea, that, of course, was before it had decided the crime of violence issue. And as we're arguing here, the district court got that wrong. So if this wasn't a crime of violence, and remember, the district court said it wasn't going to consider the underlying facts of this case, of the prior attempt conviction, because there were conflicting documents. It was just going to consider it as, on its face, whatever the fact of conviction said. And the fact of conviction here, anything that's strongly corroborative of the purpose would be enough. And that would not necessarily be the type of violence that the court was talking about. So the court's own statements belie that the guidelines did not have an effect. And remember, it has to be clear that the sentence would be the same. If there is some doubt. Wasn't she more, I mean, isn't it fair to interpret what she said was, I may be wrong on crime of violence, but I don't want to see this case again. And more or less unequivocally said, this is the sentence, period. She didn't want a remand. If she didn't want a remand, what this court has said is it can't be some boilerplate statement to avoid a remand. So if that's effectively what she's saying, I don't want to see this case again. The statement was linked to the crime of violence analysis. I'm sorry? Her statement was linked somewhat to the crime of violence complexity. You know, we have a dozen cases every term of court on what's a crime of violence. And, you know, I think she's probably getting tired of categorical and modified categorical hangout. As we are. But anyway, I read that as fairly unequivocal. Well, but it not, the ultimate inquiry is not whether she explained it or equivocal versus unequivocal. It's whether it's clear that she would have done the same thing. And if her reasons don't match up with the guidelines having an effect on her sentence, which they clearly did in this case, she said things that would have suggested above bottom of the guidelines, the government recommends bottom of the guidelines, that's where she goes. It's not like a case like Snowden, where this court noted that the sentence outside of the guideline range showed some independence from the guidelines. What's shown here is dependence on the guidelines. Well, we just, I think our rule is whether we have to speculate on whether she would have reached the same sentence. And I don't think we need to speculate here, do we? You do if her reasons don't match up with what she did. If she says I would do the same thing, but her reasons belie that. And that's what is the case here. Well, that's your position. It is my position. Mr. Pincus, I'm not going to abandon Martinez like you have. Martinez, when it talked about the application note 4B1.2, was talking about the guideline, that was the guideline portion of the application. Correct. Not the ACCA. So why can you just dismiss the application note as being irrelevant in this case? We're not dismissing the application note at all. We agree that an attempt to commit a crime that is a crime of violence is a crime of violence, as long as it is generic attempt. Well, but that's not what Martinez said. Martinez focused on the language of aiding and abetting, which made it much broader under the guidelines. Well, what Martinez was principally concerned with in its guideline discussion was whether, was an argument that the commission had gotten it wrong about whether there was a risk of violence from an attempt. And what this court said was, that's not something that would create a conflict between the commentary and the guidelines. The commission may have been wrong as an empirical matter, but that's not something we fixed. There's no inherent inconsistency between the attempt and the guideline. I understand that, but how does that make that part of Martinez inapplicable? What they're trying to do is determine whether the base fence level was properly calculated. Because this was a crime of violence. Because Martinez never addressed the argument that we're making here. It just was not part of the case. And I don't think the court was at all recognizing that. But doesn't Martinez foreclose the argument you're making? Not at all. It just was not advanced as an argument. And as this Court and Supreme Court have often said, issues that merely lurk in the record are not deemed to have been decided and to constitute a holding. And there's not even that here. It just was not made. Well, except for that they focused in the ACCA challenge part on the very issue, which was the definition of a defense. And that was the definition of an attempt under the state law, right? Yes, but what they said under that part was, Arizona says any step. And nothing narrows that. Just so here, Colorado says conduct that is solely criminal. But then when they went to the guidelines after just discussing the any step language of the attempt in Arizona,  and they said, we just go to application note one, I mean, aren't we bound by the analysis there? No, because when they were looking at the ACCA issue in Martinez, it was a question of risk. That's all it was. Nowhere was anybody talking about a generic match, whether Arizona matched generically. They were talking about, does Arizona law create, make attempted burglary go ahead? Or given that it says any step, does it make it something that creates a, poses a substantial risk under the residual clause of the ACCA? Nobody anywhere was talking about what's generic. But isn't that rewriting the application note and saying, and we inject also the generic analysis? No, this Court has repeatedly said that, and I think it's common ground here, that it's not the label that's used. It's not the name of the crime or the provision in the criminal code. It's whether that is, matches up generically, that the Taylor type analysis does apply in the guideline context. So we'd ask the Court to vacate Mr. Jimenez's sentence and remand for resentencing with a guideline range of 15 to 21 months. Great, let's hear from Mr. Farley. May it please the Court, Paul Farley for the government. If I could, I'd like to take just a moment to touch on Judge McHugh's questions about harmless error, and then we can dive into the guidelines issue. I just want to make sure that we're clear on the back story of how the district judge reached that sentence. The government did not argue or advocate, simply give us a bottom of the guideline sentence. At pages 69 and 70 of the sentencing transcript, the prosecution says, if under the guidelines this is the range, we think 30 is the right number. On the next page, the prosecutor says, but if we're wrong about the range, we still think 30 is the right number, and advocates for that. And so what we had was the government saying, we think 30 is the right number, however you get there. And then Judge Krieger picked up on that, went through the analysis, and likewise said, I think 30 is the right number, however you get there. And importantly, she noted the accelerating pattern of bad judgment and decision-making. So she was focusing in on this particular defendant's, not just history and his behavior, but the pattern that started out with driving under restraint and issues with alcohol and ending up with attempted or actual sexual offenses. And she also noted his conduct in this case since the beginning of the case is indicative of that, because even after this case was pending, he was violating the terms of his release. And that's something, obviously, the guidelines wouldn't necessarily take into account. So she's looking at his entire history and accelerating bad behavior. Even while awaiting a disposition in this case. So we think that her independent determination that 30 is the right number for this defendant is well-supported by the record. So I wanted to bring those couple of points out. Turning to Colorado attempt, the parties don't disagree on the meaning of Colorado law. Rather, the issue that's been presented is the definition of the generic contemporary meaning of attempt. And what this Court has said in the Garcia case, quoting the Supreme Court in Taylor, to ascertain that, we look at whether the statute roughly corresponds to the definitions of the crime in a majority of the state's criminal codes, as well as criminal law treatises in the model penal code. Now, what's important here is it's a broad-brush analysis. Is that still true after Mathis? I think it is. Because I think what this rough correspondence language is telling us is we don't get into the word salad of Rhode Island expresses it this way, and Illinois expresses it this way. And the model penal code and Professor Lefebvre both recognize that. And so we have to look at what the generic meaning is. In the Venzer-Granillo case from this Court in 2012, the Court said the generic definition of attempt is an intent to commit a crime and the commission of an act which constitutes a substantial step toward commission of the crime. In Pritchard, the Court said that, with respect to federal criminal offenses, that a substantial step is an act that is strongly corroborative of the firmness of the defendant's criminal intent. There's a fourth case we discuss a bit in our brief, the Dozier decision, which, again, says a substantial step is defined as a direct act in the course of conduct planned to culminate in the commission of a crime that is strongly corroborative of the defendant's criminal purpose. We think the Dozier test expresses it rightly and expresses the same principle that the Colorado attempt statute does. The discussion about if this statute or that statute precisely lines up with the expression of the model penal code we think is the wrong test. The model penal code is one of the things we look to in order to determine the generic meaning of attempt. And so even the model penal code is not the end all. The model penal code itself describes three different types of attempt that are prevalent in the generic meaning of attempt. The first is the subsection two. This is one of the jurisdictions in the country today, one of which is the substantial step test. And the commentary to subsection two, this is 5.01, subsection two, where the strongly corroborative language comes from. The commentary to that, the explanatory note, says that the subsection elaborates on the preparation attempt problem. The concern was generally that in any substantial step jurisdiction, you need something more than mere preparation. And so subsection two, with the strongly corroborating language, elaborates on that problem by indicating what is meant by the concept of substantial step contained in subsection 1C. So subsection two, strongly corroborating, is a definitional subsection, which is exactly what the concept of substantial step is. It's exactly what the Colorado statute does. We believe, as our briefs make clear, that the Colorado statute actually clearly expresses the state of the law under substantial step in the majority of jurisdictions, that strongly corroborating is what makes a step substantial. Professor Lafayette's treatise, I think, underscores this. We agree there's almost two dozen jurisdictions that have some variety of the substantial step formulation. And the key distinction that Professor Lafayette draws is between the 11 that entirely omit strongly corroborative altogether and the 12 that include it. And he doesn't regard that as a distinction that makes a difference.  As I think there was a question in the opening argument, Professor Lafayette's treatise, we don't think, missed this. It wasn't an accident. The defense hasn't pointed to a case where Colorado has applied its law of attempt in a way that's at a variance with the generic model penal code practice. Does the government have a position on Martinez's application here? Honestly, Your Honor, what I drew from the court's order asking us to focus on that was on page 1171, where it said, we are not persuaded that the Arizona courts have confined the scope of attempted burglary as much as the Florida courts have. And my takeaway from that is, we don't have an instance where the Colorado courts have applied attempted burglary. We don't have an attempt in any way other than the generic. We are engaged in a word salad here about how is it expressed here, how is it expressed there. We don't have cases that demonstrate that the Colorado statute is being applied in some sort of outlier fashion. And in that regard, we would point to the Supreme Court's Gonzales decision we quoted in our brief that for a state law to be applied outside the generic definition, there needs to be more than legal imagination. It requires a realistic probability, not a theoretical possibility, the state would apply its statute to conduct that falls outside the generic definition. We don't have that here. If that case ever arises, then there will be an opportunity to deal with it. So I, in fairness to Mr. Pincus, I didn't see that the, whether the word attempt in the commentary of the state statute that the argument about whether that was generic attempt or something else was argued in Martinez. And so I didn't pick up on that point, obviously, in the way that you had wished I had. So if there are no further questions, I will sit down. Thank you, counsel. Thank you. We may cede your time. Counsel are excused and the case shall be submitted.